Your honors, good morning. My name is Carl Gunn. I represent Mr. Torres. I'm going to try to address three of the issues. First, there was an abusive discretion in not holding an evidentiary hearing on the reasonableness of the stop or the arrest, whichever it was, because the district court made a legal error in its interpretation of California Penal Code 148. Second, the search of the backpack didn't satisfy the requirements for a search incident after arrest after Arizona v. Gantt. And third, the improper custodial interrogation in the form of the why did you run question can't be found to be harmless error under the very stringent test when the defendant entered a conditional plea rather than went to trial. On the abuse of discretion in not holding an evidentiary hearing, it's really important to understand the problem here and the standard that applies when there's that kind of problem. The court made a legal error because it held there was probable cause to arrest under California Penal Code 148 regardless of whether there was lawfulness in the underlying stop or arrest. Hankson, this court's en banc opinion in Hankson and the Supreme Court case it cites, hold that a ruling is necessarily an abuse of discretion based on an error of law when it's based on... Why wasn't there reasonable suspicion for the initial stop? They had seen him on the Snapchat video waving a gun. They had done some investigation to try to learn who he might be. Well, Your Honor, I think that's what an evidentiary hearing was necessary to decide. It all turned on whether they were reasonable in mistaking my client, Mr. Torres, for this other Adrian Torres. And there's at least three evidentiary issues, probably more that needed to be resolved in an evidentiary hearing that went to the reasonableness of that mistake. First, was it reasonable to mistake a 27-year-old Adrian Torres for my 20-year-old Mr. Torres? Second, Adrian Torres had distinctive tattoos on his forehead and his neck. Was it reasonable to mistake my client, Mr. Torres, for the Adrian Torres assuming the video showed those tattoos weren't on the person in the video? That required an evidentiary hearing. Third, Your Honor, Mr. Torres was a very small, almost diminutive man. And was it reasonable to mistake Adrian Torres, however big he was, for Mr. Torres? Those are the reasons... Your Honor, what the video showed is not in the record. All you have is one screenshot of the video. You don't have the whole video. So that's not in the record. Was there a dispute about what was in the video? Yes, well, yes. What was the dispute? Whether these tattoos showed, among other things. And was there anything in the record? Any declaration in the record? Or was it the Snapchat video produced? Not in the record. All that was produced with the motion pleadings was a screenshot. The defense attorney argued in the motion that one of the reasons he was entitled to a hearing was the tattoos. So then the question becomes, I guess, whether those tattoos showed in the video. There's also, Your Honor, I think just the fact that one's 20 and one's 27, you have to see, you know, some 20-year-olds look very old, some look very young, some 27-year-old. So I think you had to put, you had to have the two men sort of side-by-side. And the judge had to sort of look at things and decide whether he thought they were similar. Let me ask you, Mr. Gunn, did the district court actually try to sidestep that? Yes. I just want to kind of get the record straight of the proceedings. That's the problem. Wait just one minute. I'm sorry. Yeah. So my understanding is what we're talking about now, like whether there's this reasonable suspicion because of potential mistake of fact, he didn't actually make that determination. Instead, the district court seemed to go right to the fact that the guy ran and therefore he fell right into the California section 148. The district court basically concluded it didn't matter because he ran and that's the mistake of law. And under Hankson, that mistake of law means the failure to hold the hearings and abuse of discretion. But also very important, Your Honor, if you look at excerpt of record 22 to 23, there's this long back and forth between counsel for the court and counsel for the government where the court basically says, hey, if I got to decide reasonableness, I have to hold a hearing. So the court basically indicated that I would hold a hearing, but for my interpretation of California Penal Code 148. So you have two things here. First, you have the court making an error of law, which makes its decision not to hold a hearing and abuse of discretion under Hankson. Second, you have the court basically indicating that if it hadn't been for that error of law, it would have exercised its discretion to hold a hearing. So your view is that on this record, on the noble review on that probable cause that the circuit court can't make that determination? Yes, because you need to know what the video showed about that tattoos. You need to know how this 20 year old look compared to a 27 year old. And and you need to know, you know, those sorts of things. There also may be underlying facts about the officer's conduct that go to the question of whether they had to have probable cause because it was an arrest versus whether they had to have reasonable suspicion because it was just a stop. You know how they got out of the car and drew the gun, how Mr. Torres ran, you know, the way things were said and yelled, all that kind of thing would would be more factual questions. There's also some factual questions, I think, possibly, but I don't think they need to be reached on the search incident to arrest question. And I did want to address that if if I could, unless the court wants me to stay with the other. This. Search cannot be justified as a search incident to arrest, actually, even on the record you have before it. You have five published Ninth Circuit opinions. You have the Cook case, which held that a search is no arrest was allowed. And you have the Camus case, the Maddox case, the Vasey case and the Harris case, which all held a search incident to arrest was not allowed. There's two points I wanted to make. First, I think in light of Gant, you have to read Cook very narrowly. You know, starting with a Justice Scalia opinion and a concurring opinion in an earlier case that basically the court then went to in Gant. The Supreme Court has really brought the search incident to arrest exception back to the officer's safety. The destruction of evidence was decided after Gant. I thought Cook was decided after Gant. It was. But so we're just bound by Cook. You are bound by Cook. But Cook is also distinguishable. And I think it needs to be read narrowly. In fact, the Gordon unpublished opinion said Cook was a closed case. Cook is different, Your Honor, in several respects. First of all, the search in Cook happened within a minute or two of the defendant being handcuffed. Second, in Cook, the backpack was right next to the defendant, as I read the opinion. Here, one of the outstanding factual questions is we don't know where the backpack was in relation to the defendant. Let me ask you that. So we don't know if it was on his back or at the side, which appears what happened in Cook. Correct. Or whether it was three or four feet away like it was in the nap case that I cite from the Tenth Circuit with the cops standing in between. But more important, Your Honor, you have three facts here that weren't present in Cook that were like the facts that the court relied on in the other cases. First of all, you have the fact that the officers waited. We don't know how long they waited, but the record says while we were waiting for other officers. So the officers waited for other officers. We know there was some delay, and I think it sounds like at least it was more than a minute or two in Cook. Second, you have an officer going back and forth, at least one of the officers, between his vehicle and the defendant. So you have that intervening act, which was one of the intervening acts that was given weight in the other cases. Third, and I think this is really significant, you have this intervening act of questioning. Why did you run? You basically have the officers turning to what's really sort of an investigative purpose, almost, instead of their officer safety purpose. So you have these three intervening facts, and those facts, Your Honor, you don't need an evidence you're hearing for because they're conceded in the record. And our position is those facts alone are sufficient to distinguish Cook and make this case more like the other four cases. Was your client on searchable probation at the time? Well, the record, Your Honor, I believe shows he was. I don't know that the record shows what the probation search condition allowed. And most important, Your Honor, it shows the officers did not know about his probation search condition. And the case law in this court, I cite the United States v. Job case. The case law is crystal clear that officers can't rely on a probation search condition unless they know about the probation search condition. And more importantly, know what searches it allows. You know, different probation search conditions allow different things. So there's no way the government can use the probation search rationale here to avoid the problem. They also, of course, cannot use the inevitable discovery problem, the inevitable discovery rationale, because the case law is crystal clear that they had to produce evidence that there would really be an inventory search and what the policy was, and that it complied with Fourth Amendment requirements, and they didn't produce any evidence at all. So they can't rely on this inevitable discovery backup either. I will briefly step to the harmless error custodial interrogation question unless the court has more questions on the search incident issue. On that issue, Your Honors, I just want to – I really want to spend time on the custodial – it being custodial interrogation and not public safety exception. I think that's really strong. But on the harmless error argument the government tries to present, please keep in mind the very stringent standard. Some judges in cases have suggested when it's a conditional plea, the defendant has an absolute right to withdraw the plea, regardless of what speculation there might be about the error's harmlessness. The Lustig opinion does suggest there can be an inquiry, but, Your Honors, it's an extremely high standard. You have to be able to find – you have to be sure beyond a reasonable doubt that this denial of the motion, that this fact didn't even, quote, contribute, unquote, to the decision to plead guilty. And Lustig says an appellate court will, quote, rarely if ever, unquote, be able to determine if that's the case. So I don't think the government's harmless error works in this conditional plea context. Let me ask you about the harmless error. I mean, it's always hard, as you know, to evaluate this after the fact. He knew he had a gun, correct? Well, there's – That would be hard to deny that. So he knew he had a gun, and he knew he was on probation, correct? I don't know. That would probably be easy to prove. So I guess my question is, even without that statement, they would have been able to prove all this, right? And that's why I'm having trouble with the harmless error arguments. Your Honor, under the pre-Rehafe case law, yes. After Rehafe, the government has to show not only that he knew he had a gun, but that he knew he had been convicted of a crime punishable by imprisonment for more than a year. That's where the why did you run because I had a gun is really damaging. That implies that he knew he couldn't have a gun no matter what. And that's where the damage is. And, again, you know, the test here is not whether it made a difference to a jury at a trial. The test is whether it contributed to his decision to plead guilty. And the Lustig case recognizes it's almost, not quite, but almost impossible for an appellate court to make that determination. So I think here he gets to withdraw his plea, even if that's the only issue he prevails on. But, of course, our position is there is the other issue he prevails on anyway, and the government hasn't even tried to argue that there's harmlessness there. I think I'm down on my time, so I'll stop unless the court has other questions. I think not. Thank you. Ms. Massey? Good morning, Your Honors. May it please the court, Jessica Massey for the United States. I'd like to start with the discussion on the reasonableness of law enforcement's stop or initial attempted stop of Mr. Torres. Here, the court is well aware that we need to look at specific and articulable facts known to police at the time, and it's a totality of the circumstances assessment. Here, officers had information that Mr. Torres was seen on a video earlier that morning waving a firearm. The detective was able to determine the location from which that video was made because the video was posted on a Snapchat account of a known gang member. He proceeded to that location. Sergeant Wilkin and Agent Carlos then relieved Detective Martinez from surveilling that location, and they were ultimately the ones that observed Mr. Torres leaving that very location wearing the exact same clothing that he was wearing in the video that he had posted an hour or two previous that morning. At the time that Mr. Torres left the apartment or the house, he left with that known gang member. Officers, Sergeant Wilkin, told Mr. Torres and this other individual to stop, and the second individual did in fact stop when told to do so by Sergeant Wilkin, and Mr. Torres made the decision to look at Sergeant Wilkin and then take off running in the direction of a local elementary school. At that point in time, Sergeant Wilkin and Agent Carlos pursued Mr. Torres, continuing to yell, stop police numerous times as detailed in both of their reports. You are quite familiar with the facts, so I would appreciate if you could cut to the chase on the legal issues here, and that is the district court didn't make this probable cause determination separately but jumped to the fact that basically the flight was a crime under the California law and therefore moved on. And the judge specifically said if we're going to look at whether there was cause, that would require an evidentiary hearing. Why don't we take the district court at its word, since it's quite familiar with this, and here it just kind of flipped what it should have done first. Well, I think in this instance, Your Honor, separate and apart from whether or not Mr. Torres was in violation of that specific California penal code section, I think we do need to revert back to the reasonable suspicion to stop him in the first place. So regardless of whether or not he was resisting by running, officers would have had reasonable suspicion to attempt to stop him and to proceed after him because at that point in time, they believed that he was a felon wanted and in possession of a firearm and he was running in the direction of a school. So I think we don't even need to get to the point of can an officer chase after an individual because he believes that he's violating a resisting arrest statute. I think the inquiry needs to come before that. Opposing counsel says we can't tell if there's reasonable suspicion without an evidentiary hearing because was there a mistaken belief as to his identity? Was it reasonable or not? Opposing counsel says, well, you need to look at the Snapchat video. You need to look at the two people side by side. Why is that not correct? I think that is correct, Your Honor, but the record is clear and contains all of that information. So in the record, defense counsel at the district court level included in his motions, the various police reports that were written by the officers from Fresno Police Department in the government's response. We also included the police report that was written by Special Agent Carlos. And in addition, I'm sorry, Your Honor. Video? The video was not included, but we did include a photograph, a screenshot photograph of Mr. Torres pointing the firearm at the camera, as well as photographs of the other individual known as Adrian Torres, a booking photograph from Fresno Police Department, as well as a photograph of Mr. Torres in the Fresno Police Daily Crime Bulletin. There's a photograph there and also a photograph of Mr. Torres with copies of his probation terms. So all of those photographs are in the record between pages 66 and 83. The court was certainly able to review that information and make a determination based on those photographs, as well as the facts, very detailed facts. But it didn't do that, but it didn't do that. He certainly didn't articulate it on the record, Your Honor. Well, I mean, that's a pretty, you know. Yes, Your Honor. You're not the district court, so you don't have to defend it always. I mean, he either did or he didn't. And the fact is here he had all this, and he could have gone through the normal reasonable suspicion, probable cause, but he didn't. He kind of leapfrogged over to the statute. And I understand your argument that he might not have needed the statute, might not have needed to go there. But the fact is we don't have a probable cause or reasonable suspicion determination from the district court with all this information, correct? He certainly did not articulate that information, Your Honor. That is correct. Your Honor, I'd like to move on, unless the court has additional questions on that specific area. I'd like to move on to the mistake of fact argument. Here the case law is very clear that mistake of fact does not negate officer's reasonable suspicion. Here officers, again, had a video of this individual waving a firearm at, you know, approximately two hours before they saw him leaving the location from which it was posted. They believed him at the time to be a felon. They believed him to have an outstanding arrest warrant. They believed him to be on probation search terms. And they certainly had... What is the evidence that they believed him to be on probation search terms? So at the time that Mr. Torres exited the house, Your Honor, officers reasonably believed him to be an individual known as Adrian Torres. Not Raul Adrian Torres, but the other Adrian Torres. That individual, according to Detective Martinez, was on felony probation and had a warrant out for his arrest. So that's the information that they believed at the time. Simply because that information turned out to be accurate, even though the person turned out to be different, that does not negate their reasonable suspicion to stop him. And they certainly, based on the fact that the other Adrian Torres had an outstanding arrest warrant, that gave them probable cause to stop him. So separate and apart from the reasonable suspicion with regard to the felon in possession, they had probable cause to arrest him on that warrant. Next, Your Honor, I'd like to address the evidentiary hearing issue. Here, we have a situation where the defendant proffered no alternative facts that would have warranted an evidentiary hearing. There was no declaration made by the defendant, no additional supporting information, no proffers by his attorney with regard to any other facts that could have taken place in this scenario. The police reports that were, again, submitted in the defendant's motions at the district court level contained all of those police reports. Quite frankly, very detailed police reports, especially with regard to Detective Martinez and Sergeant Wilkin. There is no reason for the court to have ordered an evidentiary hearing in a situation such as this where there are no disputed facts. The basis of the defendant's motion is completely based on the legality of what happened and not alleging any alternative facts that the court would have needed to deter. It has to have a reasonable mistake of fact, correct? I'm sorry, Your Honor, could you repeat the question? There has to be a reasonable, this mistaken identity, you can always have a mistake, but you have to have had a reasonable belief that this guy was the right one that you should arrest, right? Yes. Yes, Your Honor. So, if there's issues of fact going to that good faith, doesn't that lead to an evidentiary hearing? Issues of fact as to whether it was good faith based on the size discrepancy, the tattoo discrepancy, and other things, aren't those all potential issues that would go to the good faith that would be revealed in examination of the officers at a hearing? I would say yes and no, Your Honor. So, I would say under the Hill versus California case, the court said it was permissible when officers arrested an individual that was similar to the appearance of the person that was described in the warrant. And also in Martinez versus New York City, which I think is especially applicable in this particular case, was a situation where the individual that officers stopped had the same name and date of birth of the person that they believed had an outstanding warrant, but looked completely different than the description. So, different height, different weight, et cetera. That is not the situation that we have here. Certainly, opposing counsel is attempting to focus the court on the fact that there's an age discrepancy, et cetera. But when looking at the record, it's very clear that these two individuals look alike. And I would like to flag for the court, you know, the video in which Mr. Torres was seen waving this photo, the screenshot that is included in the record, that shows him wearing what they refer to as a black beanie hat. And he was wearing the same hat when he exited the residence when officers first encountered him that day. And so, looking at that photograph of him with a hat on versus the Adrian Torres booking photo, the person that they believed him to be at the time, it would be impossible to determine whether or not he had that tattoo on his forehead. So, I don't think it's a reasonable argument to make that they were able to tell the difference and clearly, you know, knew that they were different people. It seems from reading the transcript that the district court thought that the reasonable suspicion was essentially a foregone conclusion. I mean, there's a couple parts to that. But at one point, he says, you know, certainly going after him with what they had was absolutely reasonable. They made a mistake, but it was a reasonable mistake to make. I don't need argument on that. So, I guess I'm not sure why we wouldn't take that as the district court's conclusion on that point when the district court at the end essentially referred back to the earlier polyploid. I mean, based on what the court indicated at that point in the transcript, it seems clear that the court had reviewed the information that was included in both the defendant's filing and the government's opposition. So, I would think, I would argue that the court had considered that information and had already made that determination before, quote unquote, leapfrogging to the probable cause determination. I don't want you to lose the rest of your time, but I'm particularly interested in the why did you run aspect of the case. And it seems to me that at that point, my impression at this stage, and I haven't made a final determination, is that's not for security purposes. It doesn't fall in anything like that. And it appears to be really a custodial interrogation. So, I don't, I know you don't agree with that, but just assume that were the case. How is it harmless error here? Well, I think in this situation, Your Honor, there is certainly significantly more evidence that the government could present were it to go to trial on this particular case. Here, we have a situation where there was an unwarned but uncoercive question. The one that Special Agent Carlos proposed to Mr. Torres. Those types of questions the courts made clear, for example, in Oregon versus Elstad and U.S. versus Juanica, that those previous unwarned and uncoercive statements do not prohibit the defendant from later waiving his rights and making a statement to police. If that prior statement was uncoerced and the government asserts that it was in this instance when Special Agent Carlos asked that one question, the court needs to look to the voluntariness of the statement that the individual subsequently made post Miranda. And I think here, it's very clear that Detective Martinez Mirandized Mr. Torres before speaking with him. He was not on scene during the arrest of Mr. Torres. He was not yet on scene when Mr. Torres was spewing threats in the presence of Officer Flowers. It wasn't until Detective Martinez arrived on scene that he was Mirandized. And the court needs to look to this defendant's experiences. You know, he's a 20-year-old male, English speaking with prior criminal history. This is not a situation where the individual hadn't had prior police contact. I mean, I saw that, but I'm not hearing the answer to no one was there. Your Honor, I think in light of the overwhelming evidence against him, the fact that that statement would have been let in would not have made any sort of impact on the outcome of the case. Did he make the same statement after he was Mirandized that he had a gun and that he knew he was a felon? Or what happened after he was Mirandized? So after he was Mirandized, he did indicate various things with regard to possession. So he admitted that he had a firearm. He admitted that he purchased it for $500. He admitted that he knew there was an obliterated serial number. There was a whole host of information, detailed information that he provided to Detective Martinez during that recorded interview. Those were the first substantive questions that had been asked of him with regard to the firearm. So if we were to determine that this wasn't one of these kind of shuffled two-step operations, and that that was just kind of Mirandized in the new statements, then those statements would come in about the gun, correct? I believe that they would, Your Honor, yes. And Your Honor did raise the two-step process. Certainly, the government feels strongly that this is not a situation like the one described in Siebert. There was no deliberate two-step process employed here. Thank you. Thank you, Your Honors. Mr. Gunn? Well, we gave her some extra time, so we'll put three minutes on the clock. Great, Your Honor. Thank you very much. I'll work backwards from the things that were just talked about. On the statement that was made to Detective Martinez after Miranda, two things that Mr. Torres didn't admit that are crucial under rehave is he didn't admit he knew he couldn't have any gun, even if it had serial numbers, and he didn't admit that he had been convicted, knew he had been convicted of a crime punishable by more than a year. So that statement does not replace the why did you run statement. On the harmless error, the government talks about overwhelming evidence. Remember, that's not the test in the conditional plea. The test is whether you can say beyond a reasonable doubt this didn't contribute to his decision to plead guilty. Judge Brass, I wanted to address your question. You asked about things you saw in the judge's statements that seemed to indicate he thought there was reasonableness. There were a couple statements like that. On the other hand, you also have the exchange in excerpt of record 22 to 23, where he's saying, well, gee, I'd have to have a hearing. And if you look, Your Honor, at excerpt of record 36, lines 5 through 9, he says, even in light of what the defense's view of what occurred has no effect. So that suggests that he was saying I don't need to decide whether the defense is right about unreasonableness. The government, the prosecutor said the record is clear and contains all the information. It doesn't contain some critical things. It doesn't contain the whole video. It doesn't contain information about height and weight, at least the height and weight of the other Adrian Torres. You do have photos of both of them, but you don't have a finding, an opinion from the trier of fact, the district court, whether they really look similar in terms of the age difference. I look at him and I, of course, I'm biased. I'm Mr. Torres's attorney. I want to say they don't look similar. The government says, well, the tattoo, the beanie on the head hides the tattoo. Well, maybe, maybe not. And tattoo comes over here. Maybe there might be other shots in the video that showed it. I'd like to I look at it and I say, well, I'm not so sure the tattoo on the video wouldn't show. Of course, I'm biased. The trier of fact didn't make a finding about that. The trier of fact made no finding about whether in the video you could see the person's neck and the tattoo on the neck was missing. So it's not just there's two things missing here. There's evidence that wasn't in the record, like the video, the whole video and evidence about height and weight. And there's the district court not making findings based on whether the pictures look delight and whether that tattoo on the forehead could be seen and that kind of thing. I'll submit on that, Your Honor. I do hope the court also looks very carefully, though, at the search incident to arrest issue, because I think that's a big problem for the government as well. Thank you. I thank both of you for your extensive argument and briefing. The case just argued of the United States v. Torres is submitted and we're adjourned for the morning. Thank you. Thank you. Thank you, Your Honors. This court for this session stands adjourned.
judges: McKeown, Ikuta, Bress